**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO.  4:24CR363 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE DONALD C. NUGENT |
| vs. | : | |
| | : | |
| THOMAS SLEDGE, | : | **DEFENDANT THOMAS SLEDGE'S** |
| | : | **MOTION TO SUPPRESS** |
| Defendant. | : | **(Hearing Requested)** |

Thomas Sledge files the instant Motion to suppress the Timing Advance data law enforcement obtained after procuring a geofence warrant to search all devices within a geographic area during stated timeframes. The warrant lacks probable cause and particularity under the United States Supreme Court's recent decision in *Chatrie v. United States*, 609 U.S. __, __ S. Ct. __, 2026 WL 1855568 (2026), and therefore violates the Fourth Amendment. Based on previous Supreme Court precedent, law enforcement could not have reasonably believed that the geofence information they were seeking was sufficiently particularized to withstand constitutional scrutiny. The Court therefore should suppress all fruits of this Fourth Amendment violation, including the Timing Advance data from Mr. Sledge's cellular phone that they obtained in this case.

At this Court's June 26, 2028, pre-trial conference, it set a hearing on Mr. Kaprise Sledge's Motion to Suppress for July 15, 2026, at 10:00 am. (R. 97: Minute Entry, PageID 995). Mr. Thomas Sledge now requests that the Court allow him to participate in that hearing to present oral argument for this Motion. Joining in a hearing the Court already has set on the identical legal issue as co-defendant Kaprise Sledge will serve the interests of judicial economy and permit Mr. Thomas Sledge's counsel an opportunity to argue the violation of his Fourth Amendment rights.

## I.      Factual Background

To obtain Timing Advance data for anyone within an area of interest, United States Postal Inspector Joshua Gardner created an affidavit to obtain a warrant. (Exh. A: Timing Advance Warrant Affidavit). Therein, Inspector Gardner requests Timing Advance data, which he defines as a "dataset [that] includes a device's estimated distance from a tower, in addition to latitude and longitude coordinates representing the network's estimated location of the device." (Id. at ¶ 15). The affidavit requests that the mobile network carriers Verizon, T-Mobile and AT&T Wireless provide "cell phones which interact with the service provider in a given area and at a given time. Like a geofence request, the information requested is restricted to a specific geographic area." (Id. at ¶ 16).[1] An attachment to the warrant affidavit delineates the expanse of the proposed warrant's scope:

> Records and information associated with Timing Advance, RTT, and True Call data area searches for all records of mobile devices which are determined to be present within the specified geographic location boundaries, based upon the Timing Advance estimated geocoordinates for each respective mobile device that falls within the authorized date and time range provided below:

> **Search 1:**

> • All devices estimated to be within a **150-meter** radius of the Location: 631 Olive Avenue NE, Warren, Ohio 44483, USA as identified below.
> **Date and Time Periods:** 03/02/2024 1:30 PM EST to 2:00 PM EST.
> **Target Location:** A radius of 150 meters around Latitude: **41.24247**, Longitude: **-80.81236.** The area is further described as the immediate area around the shooting of the victim at 631 Olive Avenue NE, Warren, Ohio 44483

> ***

> **Search 2:**

> • All devices estimated to be within a **150-meter** radius of the Location: 429 Maryland Street NE, Warren, Ohio 44483, USA as identified below.
> **Date and Time Periods:** 03/02/2024 1:35 PM EST to 2:05 PM EST

---

[1] While the three wireless networks have different names for this data, Mr. Sledge will refer to it universally as Timing Advance data in this Motion.

> **Target Location:** A radius of 150 meters around Latitude: **41.25617**, Longitude: **-80.81286.** The area is further described as the area in which the suspect vehicle was abandoned at 429 Maryland Street NE, Warren, Ohio 44483, USA

(Exh. B: Timing Advance Attachment A).

A second attachment to the warrant affidavit identified the vast quantity of data the government was to collect from the search as:

> a. The telephone number and unique identifiers for each wireless device in the vicinity of the search area/cell tower ("the locally served wireless device"), that registered with the cell tower, including Electronic Serial Numbers ("ESN"), Mobile Electronic Identify Numbers ("MEIN"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), International Mobile Equipment Identities ("IMEI"), a Subscription Permanent Identifier ("SUPI"), and/or a Network Access Identifier ("NAI");
> b. For each communication or signaling event, the "sector(s)" (i.e., the face(s) of the tower(s)) that sent or received a radio signal from the locally served wireless device/located mobile device, and the distance the mobile device is estimated to be from the tower;
> c. The date, time, duration, and type of each communication or signaling event.

(Exh. C: Timing Advance Attachment B).

Once law enforcement collected this wealth of personal information, the government would proceed to a second step involving the review of all the device information from the three wireless network carriers. Acknowledging the vast scope of the information it would collect, law enforcement stated it would use "various methods" to analyze the date produced by the three network carriers "in an effort to isolate mobile devices of interest, while attempting to mitigate any undue invasion of privacy to innocent third parties." (Id.) To perform its "attempt to mitigate," law enforcement would search for personal device information that overlapped between the two searches in both time and geographic location. A magistrate judge signed the warrant on March 27, 2024. (Exh. D: Timing Advance Warrant).

In response to the warrant, T-Mobile provided Timing Advance data for 233 devices. (Exh. E: T-Mobile Spreadsheet). AT&T provided Timing Advance data for 14 devices (Exh. F: AT&T Spreadsheet)[2].

The breadth of the warrant makes clear it is a "geofence" warrant, which searches all devices contained within specified perimeters.

## II.     Law and argument

### A.     The intersection between the Fourth Amendment and modern technology

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., Amend. IV. The Supreme Court has rejected general-type warrants, emphasizing the "particularity" requirement of the Fourth Amendment: "The Fourth Amendment's requirement that a warrant particularly describe the place to be searched, and the persons or things to be seized, makes general searches impossible. . . ." *Berger v. New York,* 388 U.S. 41, 58 (1967) (internal quotation marks and citations omitted). "[A] warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Massachusetts v. Sheppard*, 468 U.S. 981, 988, n. 5 (1984).

As location-based technology has advanced, the Supreme Court timely responded to safeguard citizens' Fourth Amendment privacy rights. A dozen years ago, in *Riley v. California*, 573 U.S. 373 (2014), the Court held that the search of a cellular phone incident to an arrest could not proceed without a warrant because of the "vast quantities of personal information" that they

---

[2] Based on the discovery the government provided Mr. Sledge, he is unaware of any subpoena responses from Verizon.

contain. *Id.* at 386. The Court revisited this issue several years later in *Carpenter v. United States*, 585 U.S. 296 (2018), where it held that accessing cell-site location information ("CSLI") without a warrant was a Fourth Amendment violation because "individuals have a reasonable expectation of privacy in the whole of their physical movements." *Id.* at 310. This past term, the Court again accepted review of newer technology which allowed for a geofence search of all network devices based on government-identified perimeters. Following its precedent, the *Chatrie* Court again enunciated that privacy rights protected against unwanted invasion into citizens' location data. It is this Opinion which dictates that the Court should grant Mr. Sledge's Motion.

**B.      The *Chatrie* holding directs the Court's decision here.**

In *Chatrie*, the Court determined that "[a]n individual has a reasonable expectation of privacy in records about his cell phone's location, . . . , even though only for a limited time, and from a third-party tech company." 2026 WL 1855568, at *4. There, the government sought a geofence warrant from Google, utilizing a three-step approach. First, Google provided the government with anonymous location data for all devices within the geofence radius, showing the user's location approximately every two minutes. Second, the government would review the data Google provided seeking a subset of still anonymous users but for a longer timeframe and revealing information about the user's location both inside and outside the geofence. At the third step, the government would demand the identities of a presumably narrower class of users, including personal information such as their names, email addresses and phone numbers. *Id.* at *6. In the warrant at issue in *Chatrie*, the government indicated it sought information identifying a bank robber and his possible accomplices within a specific area and time.

In formulating its opinion, the *Chatrie* Court first observed that *Carpenter* had concluded that "society's expectation has been that law enforcement agents and others would not . . . secretly

monitor and catalogue every single movement of an individual. . . ." *Carpenter*, 585 U.S. at 310. A logical next response to advancing technology, the *Chatrie* Court concluded, was to safeguard this protection with Location History data because "[a] new technology should not transform what individuals had reasonably thought they could withhold from the Government." *Id.* at \*10. Reiterating *Carpenter*'s observation that an individual certainly would deem private trips to the psychiatrist or AIDS treatment center, the *Chatrie* Court found the resemblances "between CSLI and Location History in their relationship to personal privacy, practically leap off the page." *Id.* at \*11. Indeed, the Court held that Location History information, even more than CSLI, further invaded the privacy right because of the wealth of information it contains. This was true, the Court held, despite the government's argument that the short time window of two hours in that case, was a "Constitution-free zone." *Id.* at \*12. The *Chatrie* Court rejected this argument, finding that even a short timeframe "allows officers to targe one-off events of potential interest: a gun show, say, or a political rally." *Id.*

Finding that neither the government's limited timeframe nor the involvement of a third party eroded the Fourth Amendment's privacy stronghold, the *Chatrie* Court concluded: "When the government 'accesses historical cell phone' location information-- Location History as much as CSLI—it 'conducts a search under the Fourth Amendment.'" *Id.* at \*16 (quoting *Carpenter*, 585 U.S. at 300). Having decided that the Fourth Amendment requires a warrant, the Court scrutinized the warrant at issue in that case. It found that the legality of the warrant would turn on "whether a magistrate has properly found probable cause to support a particularly described search." *Id.* at \*17.

    **C.    The warrant the government obtained here, like Chatrie's, was a general warrant lacking in probable cause.**

The geofence warrant here, like that in *Chatrie*, is an unconstitutional general warrant, lacking in both specificity and probable cause. As Justice Jackson observed in her concurring opinion in *Chatrie*, the warrant was unconstitutional because at step three of the process the warrant authorized officers to access private, identifying information such as date of birth, email and/or telephone numbers. While the officers stated in *Chatrie* that they would "*attempt* to narrow down the list" of individuals' whose personal information they obtained, the approach the officers utilized meant that "officers conducted key portions of the search outside the supervision of a 'neutral and detached magistrate.'" *Chatrie*, 2026 WL 1855568 at *18 (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948)). That same violation occurred in Mr. Sledge's case. Although law enforcement stated it would use "various methods" to analyze the data produced by the three network carriers "in an effort to isolate mobile devices of interest, while attempting to mitigate any undue invasion of privacy to innocent third parties," that promise, as in the *Chatrie* warrant, meant that the "mitigating" efforts would occur outside the supervision of a magistrate judge.

Moreover, the warrant here, as in *Chatrie* is a "general" warrant lacking in probable cause and specificity. To satisfy that requirement, there must be probable cause that evidence will be found in the place described with particularity. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Longstanding Supreme Court precedent requires both these facts to be averred in a warrant affidavit to ensure that an individual's proximity to others suspected of criminal activity "does not, without more, give rise to probable cause to search that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). Here, the warrant impermissibly authorized the collection of individual's private data solely because of their proximity to a murder that occurred in Warren, Ohio.

Like a warrant that authorizes the search of a package must identify that package with particularity based on probable cause that contraband is in it, the search of the three wireless

7

network providers' accounts required the accounts to be identified with particularity based on probable cause that evidence contained therein. The government cannot declare Verizon, AT&T and T-Mobile as a place to be searched and obtain a warrant to search hundreds of accounts on the theory that there is probative evidence in at least one of them. The Court should find the search warrant was unconstitutional because it was a general warrant, lacking in requisite specificity to comport with the Fourth Amendment.

## III.    Conclusion

For the foregoing reasons, the Court should find law enforcement violated Mr. Sledge's Fourth Amendment rights when they acted pursuant to an unconstitutional general warrant that lacked probable cause and specificity.  All evidence obtained as a fruit of that Fourth Amendment Violation should be suppressed.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

/s/Timothy C. Ivey
TIMOTHY C. IVEY
First Assistant Federal Public Defender
Ohio Bar: 0039246
/s/David E. Johnson
DAVID E. JOHNSON
Assistant Federal Public Defender
Ohio Bar: 0081505
/s/Michael V. Heffernan
MICHAEL V. HEFFERNAN
Assistant Federal Public Defender
Ohio Bar: 0074776
/s/ Lori B. Riga
LORI B. RIGA
Research & Writing Attorney
Ohio Bar: 0066994
1660 West Second Street, Suite 750
Cleveland, Ohio 44113

8

(216) 522-4856 Fax: (216) 522-4321
e-mail address: timothy_ivey@fd.org
e-mail address: david_Johnson@fd.org
e-mail address: michael_heffernan@fd.org
e-mail address: Lori_Riga@fd.org

*/s/Michael J. Ledenko*
MICHAEL J. LEDENKO
Research and Writing Attorney
Ohio Bar: 0099775
50 S. Main Street, Suite 700
Akron, OH 44308
Phone 330-375-5739 Fax: 330-375-5738
e-mail: michael_ledenko@fd.org

*/s/James A. Jenkins*
JAMES A. JENKINS
Ohio Bar: 0005819
55 Public Square, Suite 2100
Cleveland, Ohio 44113
Phone: 216-363-6063
e-mail: jajenkins49@hotmail.com